IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22–CR-40033-SMY |
| | ) |
| JAMES E. FORD, | ) |
| | ) |
| Defendant. | ) |

# ORDER

**YANDLE, District Judge:**

Defendant James E. Ford is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moves to suppress a handgun recovered after what he contends was an illegal search by an Illinois State Police Trooper and to suppress his statements made to the trooper after his arrest (Doc. 25). The Government opposes the Motion (Doc. 27). The Court conducted an evidentiary hearing on the motion on March 21, 2023 (Doc. 30).

## Factual Background

The facts are largely undisputed by the parties: On June 9, 2022, shortly after midnight, Illinois State Trooper S. Reagan Jr. was patrolling State Route 127 in Perry County, Illinois when he observed a fast-moving Ford Escape. His police radar indicated the vehicle was traveling 84 m.p.h., exceeding the posted speed limit of 55. Trooper Reagan pulled the vehicle over for speeding. He also ran the license plates and determined the plates had been suspended.

Trooper Reagan testified that he had been trained on the detection of burnt and raw cannabis by smell. As he approached the Ford Escape, he detected the strong odor of raw cannabis emanating from the vehicle.

Trooper Reagan also testified that Defendant James E. Ford, the only occupant of the vehicle, seemed overly nervous. Ford told Trooper Reagan that he was trying to get to Carbondale to his ill wife, that his license was revoked, and that the vehicle belonged to his mother. As they talked, Trooper Reagan observed two plastic baggies containing cannabis in plain view in a cupholder near the driver's seat.

Trooper Reagan asked Defendant Ford to exit his vehicle, and he complied. Trooper Reagan returned to his squad car and confirmed that Ford's driving privileges had been revoked and that he was on Mandatory Supervised Release from the State of Illinois for an Armed Robbery conviction in a Peoria County case (2009CF1017), and for an Aggravated Robbery conviction in another Peoria County case (2009CF669). Trooper Reagan advised Ford he was under arrest for driving with a revoked driving license and had him sit in the back of his squad car. He did not issue any *Miranda* warnings to Ford following the arrest.

Trooper Reagan testified that he began a search of Ford's vehicle in compliance with Illinois State Police protocol that requires officers to make an inventory of all items in vehicles before impounding them. The protocol provides in relevant part:

> The Department officer(s) who completes the Tow Report will make an examination and inventory of the contents of all vehicles/boats towed or held by authority of a department officer(s). This examination and inventory will be restricted to those areas where an owner or operator would ordinarily place or store property or equipment in the vehicle/boat, and would normally include, but not be limited to: [bags]". (Government Exhibit 6).

Trooper Reagan retrieved the cannabis he had observed in plain view and also retrieved a backpack from a car seat in the rear of the vehicle, in which he found a Stoeger STR-9C 9mm handgun.

After Trooper Reagan retrieved the handgun, he returned to his squad car and had the following exchange with Ford:

> Reagan: Okay we were being honest with each other, want to be honest now?

Ford: Yes, sir.

Reagan: What's the deal?

Ford: Life is over, bro.

Reagan: Just be honest with me.

Ford: I was on my way to my wife.

Reagan: You were on your way to your wife though?

Ford: Yes, sir.

Reagan: Just had that stuff with you?

Ford: Yes, sir.

Reagan: Alright. Is it stolen?

Ford: What?

Reagan: The firearm.

Ford: It don't even belong to me, but I had it.

Reagan: Is it valid?

Ford: I don't know.

Reagan: You don't even know?

Ford: I'm not even supposed to have it.

Reagan: Okay, Okay. Well I know you're not supposed to have it because you're a felon, alright? I know that, but I'm just saying, is it stolen?

Ford: Sir, I swear to God I don't know.

Reagan: You don't know, you don't know where you got it from?

Ford: [Unknown response]

Reagan: Alright. Understand, understand. I'm not mad at you. Sit tight.

(Doc. 27, pp. 3-4).

Ford also told Trooper Reagan that he wanted to bring the handgun to his girlfriend in Carbondale for her protection (Doc. 27, pp. 4-5).

Trooper Reagan returned to the vehicle to complete his search, including taking a photograph of the recovered handgun in an evidence bag. Following the completed search of the vehicle and its tow, Trooper Reagan transported Ford to the Perry County Jail.

On August 16, 2022, a federal grand jury returned an indictment charging Ford with one count of being a felon in possession of a firearm in violation of Title 18, U.S.C. § 922(g)(1) (Doc. 1).

## Discussion

Ford contends that the search of his vehicle was unconstitutional because there was no probable cause for Trooper Reagan to search the vehicle after an arrest for expired registration and driving on a suspended license and that an inventory was not necessary because there was no reason to tow the vehicle. He further contends that statements he made to the trooper after he was placed under arrest should be suppressed as they violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Fourth Amendment to the Constitution provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. Amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967).

Under the automobile exception to the warrant requirement, police may conduct a warrantless search of an automobile if they have probable cause to believe the vehicle contains evidence of criminal activity. *United States v. Edwards,* 769 F.3d 509, 514 (7th Cir. 2014). "Probable cause to search exists where, based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Williams,* 627 F.3d 247, 251 (7th Cir. 2010). The search may extend to "any area of the vehicle in which the evidence might be found." *Arizona v. Gant,* 556 U. S. 332, 347 (2009).

Here, the facts known to Trooper Reagan supported a search of the vehicle. He smelled the raw odor of cannabis and saw, in plain view, two canisters of cannabis near the driver's seat. *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) (holding that there was probable cause to search vehicle when officer smelled cannabis). As such, he had probable cause to search the entire vehicle. 625 ILCS 5/11-502.15; *see also*, *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2020) (officer's smelling of marijuana as he stood next to vehicle was enough to give rise to probable cause to search entire vehicle, including a garbage bag).

Additionally, Trooper Reagan had confirmed that Ford was on mandatory supervised release from the State of Illinois and had agreed to such searches as a parolee. Under these circumstances, the search of the vehicle following the arrest was proper as well. *United States v. White*, 781 F.3d 858, 864 (7th Cir. 2015) (search of the bag that defendant had left in his cousin's car was reasonable given his status as a parolee). *See also*, *Samson v. California,* 547 U.S. 843 (2006) (warrantless search of parolee did not violate Fourth Amendment where state law authorized search as condition of parole).

Trooper Reagan's search of the vehicle was also a proper inventory search – a well-recognized exception to the warrant requirement. *South Dakota v. Opperman,* 428 U.S. 364, 376 (1976). An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *United States v. Jackson,* 189 F.3d 502, 508-09 (7th Cir. 1999). Trooper Reagan conducted an inventory search in compliance and consistent with ISP protocol that included accounting for the items in a bag that Defendant Ford had left in the backseat.

Although the search and retrieval of the handgun was proper, statements Ford made to Trooper Reagan after he was placed under arrest must be suppressed. The Fifth Amendment requires that, before police officers interrogate a suspect in custody, they must warn the suspect of his right to remain silent and right to an attorney. *Miranda v. Arizona,* 384 U.S. 436 (1966). This *Miranda* warning is required when the suspect is "in custody" and subject to "interrogation." *United States v. Patterson,* 826 F.3d 450, 454 (7th Cir. 2016). It is undisputed that Trooper Reagan did not Mirandize Ford at any time during their encounter and that Ford made statements to him after he had been placed under arrest and placed in the back of a squad car. This was a clear violation of Ford's Fifth Amendment rights.

## Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 25) is **GRANTED in part**. The handgun and related evidence will not be suppressed. Any statements that Defendant Ford made to Trooper Reagan after being placed under arrest will be suppressed pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966).

**IT IS SO ORDERED.**

**DATED: April 10, 2023**

**STACI M. YANDLE**
**United States District Judge**